IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY JUJUAN HOPKINS, | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION 14-0531-WS-C |
| ASHLEY M. RICH, *et al.*, | : | |
| Defendants. | : | |

REPORT AND RECOMMENDATION

Plaintiff, an Alabama inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  The Court grants Plaintiff's motion to amend his complaint (doc. 10), and recommends that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i), (ii) and §1915A(b)(1).

I. **Complaint as Amended**[1] **(Docs. 1, 10).**

Hopkins, a minister and evangelist, was arrested on July 28, 2008 for the murder of his wife after police retrieved her body from a freezer at Hopkins' home.  (Doc. 1 at 6, 15).  Following a publicized arrest and jury trial, Hopkins was convicted, on April 7, 2010, of the murder of his wife, as well as, second-degree rape, second-degree sodomy, and second-degree sex abuse and incest of his stepdaughter. (*Id*. at 6, 15-16).  He is currently serving a sentence of life imprisonment plus 51 years.  (*Id*. at 6).

---

[1]  The Court herein grants Hopkins' motion to amend his complaint and incorporates the amendments to his claim into this recommendation.  (*See* Doc. 10).

After unsuccessful appeals challenging his conviction, Hopkins filed this timely federal action claiming his constitutional rights had been violated and his trial and appeals had been prejudiced by defendants, Mobile County District Attorney Ashley Rich,[2] Mobile County Chief of Police Philip Garrett, Pathologist John Krilokowski, NBC Universal and E! Television Producer Nick Cates, and Jupiter Entertainment Producer Briana Schibel.  (*Id*. at 5-8).  Hopkins claims defendants are liable for slander, defamation, providing false information, and emotional distress by the following acts:

> Mobile County District Attorney Ashley Rich, following his arrest, "accused [him] in the media of murdering (killing) [his] wife without investigating the incident and without the autopsy being final" (doc. 1 at 5) and labeled him a "chameleon" following his conviction.  (*Id*. at 5).
>
> Mobile County Chief of Police Philip Garrett gave a public statement, following Hopkins' arrest, that Hopkins killed his wife prior to obtaining the autopsy results and investigating the death of his wife. (*Id*. at 8).
>
> Forensic pathologist John Krilokowski testified at trial that the victim had been murdered, despite being unable to specify a cause of death and without prior review of her medical records. (*Id*. at 8).
>
> Nick Cates and Briana Scheibel used Hopkins' name, pictures, and information relating to his murder conviction in documentaries without his consent.[3]  (*Id*. at 5-6).

Hopkins filed this action pursuant to 42 U.S.C. § 1983 claiming defendants violated his Fifth, Eighth, and Fourteenth Amendment rights; he also alleges federal violations of 42 U.S.C. § 1985, 1986, 18 U.S.C. §§ 241, 242, 1623(a), and

---

[2]   At the time of Hopkins' arrest, Defendant Ashley Rich was an Assistant District Attorney in Mobile County; she campaigned throughout Hopkins' trial for her position as the County's District Attorney.  (Doc. 1 at 5).  Hopkins contends that having campaign supporters of Rich on the jury prejudiced his trial. (*Id*.).  This claim, as the defamation claim against defendant Rich, is barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), discussed *infra* at section III., A., 3.

[3]   Hopkins acknowledges that both defendant producers contacted him by letter notifying him of the documentary to be produced and requesting permission to interview him for the documentaries, but he declined to respond to either defendant. (Doc. 1 at 5-6, 29-31).

U.D.H.R. 3, 5, 7.  (Doc. 10 at 1-2).  Hopkins seeks monetary relief totaling $650,000.00 for damages.  (*Id*.).

## II.  Standards of Review Under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing his complaint (Docs. 1, 10) under 28 U.S.C. § 1915(e)(2)(B).  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact."  *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S. Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).[4]  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.* at 327, 109 S. Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist.  *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal,* 556 U.S. at 678.

---

[4]   The frivolity and the failure-to-state-a-claim analysis contained in *Neitzke v. Williams* was unaltered when Congress enacted 28 U.S.C. § 1915(e)(2)(B) in 1996.  *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001).  However, dismissal is now mandatory under § 1915(e)(2)(B).  *Id.* at 1348-49.

3

Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  *Jones v. Bock,* 549 U.S. 199, 215, 127 S. Ct. 910, 920-21, 166 L.Ed.2d 798 (2007).

When considering a *pro se* litigant's allegations, a court holds them to a more lenient standard than those of an attorney, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595-596, 30 L.Ed.2d 652 (1972), but the court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action."  *GJR Investments v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010) (relying on *Iqbal*, 556 U.S. 662).  The factual allegations are treated as true by the court, but conclusory assertions or a recitation of a cause of action's elements are not.  *Iqbal*, 566 U.S. at 681.  In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure."  *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

III.  Analysis.

    A.    Section 1983 Claims.

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  In order "[t]o sustain a cause of action based on section 1983, [a plaintiff] must establish two elements: (1) that [he] suffered a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States, and (2) that the act or omission causing the deprivation was committed by a person acting

4

under color of law." *Wideman v. Shallowford Community Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987) (internal quotations and citation omitted).

    1.    <u>Defendants Nick Cates and Briana Schibel are Not State Actors.</u>

The law is clear that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) (citation omitted). For a defendant's actions to be under color of state law, such conduct must be "fairly attributable to the State," which in turn requires that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citation omitted). "Only in rare circumstances can a private party be viewed as a 'State actor' for section 1983 purposes." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (quoting *Harvey*, 949 F.2d at 1130). Indeed, a private entity can qualify as a "state actor" under § 1983 only if one of the following three tests is satisfied: (a) a "state compulsion test," wherein the state has coerced or significantly encouraged the violative conduct; (b) a "public function test," wherein private parties perform a public function that is traditionally the exclusive prerogative of the state; and (c) a "nexus/joint action test," wherein the state has insinuated itself into a position of interdependence with the private party, such that the state and private party are essentially joint participants in an enterprise. *Rayburn*, 241 F.3d at 1347; *see also Green v. Abony Bail Bond*, 316 F.Supp.2d 1254, 1259-60 (M.D. Fla. 2004). The "state actor" determination must be made on a case-by-case basis. *See Focus*, 344 F.3d at 1277.

As to the claims against television documentary producers, defendants Cates and Schibel, neither party appears to be an entity or person who typically acts under color of state law. Moreover, Hopkins has not alleged that defendants acted under color of state

5

law. Specifically, the allegations do not indicate that defendants perform a traditional state function, were coerced by the State, or were joint participants with the State in business. In fact, Hopkins does not allege that defendants had any contact with the State. Because Hopkins has shown no basis on which Cates or Schibel could be found to be a state actor, all of his claims against Cates and Schibel brought under Section 1983 – which means at least all of his constitutional claims – fail as a matter of law.

    2.    <u>Defendant John Krilokowski is Immune from Suit.</u>

Alabama State Pathologist John Krilokowski performed the autopsy of Hopkins' deceased wife and testified as to such at Hopkins' trial. Krilokowski testified that he ruled the case one of "homicidal violence of undetermined ideology," meaning he could not determine the anatomic cause of death, but because of the circumstances surrounding the death, *i.e.*, the death being unreported for almost four years and the body being found in the freezer, the death was considered a homicide. (Doc. 1 at 23). Hopkins alleges Krilokowski falsified information by opining the death as a homicide and committed malpractice by not reviewing the decedent's medical records prior to performing the autopsy. (Doc. 1 at 8).

Hopkins claims relate solely to the testimony given by Krilokowski as a witness at trial; therefore, such claims are not viable pursuant to § 1983 as witness are completely immune for their testimony at trials.

> Witnesses are granted absolute immunity for their testimony during trials, *Briscoe v. LaHue*, 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983), and during grand jury proceedings. *Strength v. Hubert*, 854 F.2d 421 (11th Cir.1988). Judicial and quasi-judicial officers also enjoy absolute immunity. *Imbler*, 424 U.S. at 420-21, 96 S. Ct. 984.

*Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999). As such, the claims against Defendant Krilokowski should be dismissed as frivolous as a matter of law.

3.   <u>Defendants Ashley Rich and Philip Garrett Cannot be Sued for Defamation Under § 1983.</u>

Hopkins claims defendants Rich and Garrett slandered and defamed his character and reputation and prejudiced his criminal trial by stating to the press that his wife had been "killed" and by accusing Hopkins of "killing" her. (Doc. 5, 8). The news article referencing Defendant Garrett states:

> As of Tuesday morning, when Garrett held a news conference to announce Hopkins' arrest, it was not even known how Arletha Hopkins had been killed or what condition her body was in.

(Doc. 1 at 15). The news article referencing Defendant Rich states:

> Thursday morning a judge denied Hopkins bond on murder charges. . . . The body is believed to be that of Arletha Hopkins, who has not been seen in nearly four years. Investigators are waiting on autopsy results to make a positive identification, but at least one of the Hopkins children told investigators it was their mother.
>
> During Thursday's bond hearing, it came out that Arletha Hopkins was killed in November of 2004. Assistant District Attorney Ashley Rich tells FOX10 News Arletha Hopkins was killed at the family home. . . .

(Doc. 1 at 16). Taking the allegations of the complaint as true, the Court finds that Hopkins cannot prevail on his asserted claims against Garrett or Rich, as there is no monetary recovery for defamation alone under § 1983. *Charles v. Scarberry*, 340 F. App'x 597, 599-600 (11th Cir. 2009) (Slander is not recognized as a violation of federal law.) (unpublished); *see Barley v. Autauga Cnty. Comms's*, CA No. 2:14-CV-55-TMH, 2014 WL 584255, at *2 (M.D. Ala. 2014) (unpublished) (A "slander and defamation claim fails to state a claim of constitutional proportion since the Constitution does not forbid defamation, libel or slander.").

A person's reputation by itself is not a "liberty" or "property" interest that is protected by the Fourteenth Amendment and its due process principles. *Moncrieffe v. Broward Cnty. State Attorney's Office,* 516 F. App'x 806, 807 (11th Cir. 2013) (unpublished).[5] "[N]o constitutional doctrine [exists] converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Paul v. Davis,* 424 U.S. 693, 702, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976). That is,"[a]n alleged act of defamation of character or injury to reputation is not cognizable in a complaint filed under § 1983." *Padgett v. Mosley,* CA No. 2:05-cv-0608-MEF, 2007 WL 2409464, at *7 (M.D. Ala. Aug. 20, 2007) (unpublished).

While Hopkins does partner his tort claim of defamation with the allegation of prejudice to his trial, this claim too is unconscionable under the circumstances and cannot be used to sustain his § 1983 action. Success on a claim that his trial was prejudiced would necessarily imply the invalidity of his conviction or sentence; therefore this claim must be dismissed pursuant to *Heck v. Humphrey*. *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); *Messer v. Kelly*, 129 F.3d 1259 (4th Cir.1997) (stating that the rationale in *Heck* applies in *Bivens* actions).

Under *Heck* a state prisoner may not bring a claim for damages under 42 U.S.C. § 1983 "if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." *Heck*, 512 U.S. at 487. "In order to determine whether such a negation would occur, [the court] must look at both 'the claims raised under § 1983' and 'the specific offenses for which the § 1983 claimant was convicted.'" *Weaver v. Geiger*, 294 F.

---

[5] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

App'x 529, 533 (11th Cir. 2008) (unpublished) (finding that a claim for an invalid basis for a search warrant amounted to an attack prohibited by *Heck* because the plaintiff's conviction for intent to distribute was based on the methadone that was uncovered during the search authorized by the contested warrant).  Hopkins' complaint is filled with allegations of conspiracy and false statements that labeled him a murderer prior to his trial and led to his murder conviction.  Thus, it appears from plaintiff's allegations, that if the Court were to rule favorably for Hopkins on these claims, the ruling would invalidate his conviction and sentence.  In order for the Court to proceed on the claim of trial prejudice due to the statements of defendants, Hopkins must show that his conviction and sentence have been invalidated in a manner prescribed by *Heck*.  512 U.S. at 486.  (The Supreme Court held that "in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, (footnote omitted), a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.").  Hopkins has not proven this, and based on the record before the Court, he will not be able to make this showing as his post trial appeals have been unsuccessful.  Thus, all § 1983 claims against defendants Rich and Garrett are due to be dismissed as frivolous.

>    **B.**    **42 U.S.C. § 1985 Claims.**

The complaint is vague and lacks factual details regarding conspiracy claims in violation of 42 U.S.C. § 1985.  The only subsection of § 1985 that could possibly be

applicable here is (3), which outlaws, *inter alia*, conspiracies to deprive a person or class of persons of equal protection of the laws.  Hopkins' theory of relief under § 1985(3) is not clearly articulated in the pleadings; however, it appears that Hopkins alleges defendants Garrett and Rich conspired to charge him with murder and defendant Krilkowski conspired with prosecuting attorney Rich to "prejudice the jury against the Plaintiff by Falsifying the death of Mrs. Arletha Hopkins, by saying her death was a Homicide."  (Doc. 1 at 11).  Hopkins provides no other evidence or statement beyond this conclusory allegation of a conspiracy between the parties.

The elements necessary to prove a § 1985 claim are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002).  It is incumbent on Hopkins to "show some evidence of agreement between the defendants." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1284 (11th Cir. 2002); *see also Mickens v. Tenth Judicial Circuit*, 181 F. App'x 865, 876 (11th Cir. 2006) (The core of a conspiracy claim is an agreement between the parties. . . ."); *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) ("The linchpin for conspiracy is agreement, which presupposes communication."); *Belfast v. Upsilon Chapter of Pi Kappa Alpha Fraternity at Auburn University*, 267 F. Supp.2d 1139, 1146-47 (M.D. Ala. 2003) (conspiracy claim under § 1985(3) requires plaintiff to show agreement between members, and while evidence may be circumstantial, there must be some indication that defendants were acting in concert pursuant to an agreement to act against

10

plaintiff's rights). Thus, the plaintiff "must show . . . an agreement between two or more people (at least one of whom is a state actor) to violate his constitutional rights. . . ." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1191 (11th Cir. 2011).

Here, Hopkins has shown no evidence of an agreement or understanding or willful participation between the police chief, police department, district attorney's office, prosecuting attorney, or forensic pathologist. Further, no reasonable inference can be drawn from the record that the parties collaborated or cooperated in a nefarious plot to frame Hopkins for murder. The record is obsolete of the requisite "understanding" or "willful participation" necessary to establish liability on a § 1985(3) conspiracy claim. Additionally, Hopkins fails to claim or show racial or class-based discriminatory hostility behind the alleged conspiracy. *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 628 (11th Cir. 1992).

Therefore, Hopkins has failed to establish the existence of a conspiracy under 42 U.S.C. § 1985(3), and the claim should be dismissed for failure to state a claim.

**C.     42 U.S.C. § 1986 Claims.**

A claim under Section 1986 requires the plaintiff to prove that the defendant knew of a Section 1985 conspiracy, that he had the power to prevent (or aid in preventing) the constitutional violation made the object of the conspiracy, and that he failed to do so. 42 U.S.C. § 1986; *accord Cox v. Mills*, 465 F. App'x 885, 888 (11th Cir. 2012). Hopkins has identified no evidence that any one knew of a Section 1985 conspiracy involving the defendants and a plot to convict him of murder or that any one had the power to stop the conspiracy from succeeding.

11

As discussed above, Hopkins has identified no evidence that an underlying Section 1985 conspiracy existed.  As noted in Part B, the plaintiff has failed to show an agreement to violate his constitutional rights, despite his conspiracy theories.  Since claims under Section 1986 are "derivative" of Section 1985 claims, the failure to establish a conspiracy for purposes of a Section 1985 claim dooms the derivative Section 1986 claim. *E.g.*, *Cox*, 465 F. App'x at 888.

For both these reasons, Hopkins' Section 1986 claims against defendants fail as a matter of law.

### D.      18 U.S.C. §§ 241, 242, and 1623 Claims.

Plaintiff Hopkins contends that defendants are liable for violations of 18 U.S.C. §§ 241,[6] 242,[7] and 1623.[8]  These allegations, however, are improper because these are criminal statutes and do not provide a private civil right of action, *Moriani v. Hunter*, 462 F. Supp. 353, 355 (S.D.N.Y. 1978).  Absent some expression of Congressional intent to create a private right of action, a plaintiff cannot maintain a civil claim against a defendant for violation of a federal criminal statute. *See*, *e.g.*, *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1303 (11th Cir. 2008) (rejecting notion that Congress authorized "a federal private right of action any time a civil plaintiff invokes a federal

---

[6]      Under 18 U.S.C. § 241, individuals who conspire to "injure, oppress, threaten, or intimidate" another person's "free exercise or enjoyment of any right or privilege secured to him by the Constitution" shall be fined, or imprisoned, or both.

[7]      Under 18 U.S.C. § 242, any individual, who, while acting under color of any law, willfully deprives a person of his constitutional rights based upon that person's race shall be fined, or imprisoned, or both.

[8]      Under 18 U.S.C. § 1623, any individual who makes a "false material declaration" before a grand jury or in court shall be fined, or imprisoned, or both.

criminal statute"); *Bullard v. MRA Holding, LLC*, 890 F. Supp.2d 1323, 1329 (N.D. Ga. 2012) ("absent a clear indication from Congress, courts should not infer a civil cause of action from a federal criminal statute"); *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007) ("a private citizen cannot enforce criminal statutes in a civil action"). Given that plaintiff may not force prosecutors to institute a criminal prosecution against defendants pursuant to §§ 241, 242 and 1623, nor may he bring a civil action himself, the claims based on these statutes should therefore be dismissed. *See Grant v. Parker*, 2008 U.S. Dist. LEXIS 22181 (M.D. Fla. Mar. 29, 2008).

### F.     U.D.H.R. art. 3, 5, 7 Claims are Not Federal Rights.

Hopkins alleges violations of the Universal Declaration of Human Rights ("UDHR"), a declaration adopted by the United Nations following World War II. *See* Universal Declaration of Human Rights 1948, G.A. Res. 217A (III), U.N. Doc. A/180 at 71 (1948). However, Hopkins brings these claims under § 1983, which, as discussed *supra*, provides a cause of action based on "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Eleventh Circuit has expressly stated that the rights secured by the UDHR are not laws of the United States:

> The rights secured by the UNDHR are not federal rights. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734, 124 S. Ct. 2739, 2767, 159 L. Ed. 2d 718, (2004) ("[The UDHR] does not of its own force impose obligations as a matter of international law.").

*Moore v. McLaughlin*, 569 F. App'x 656, 660, (11th Cir. 2014) (upholding dismissal of § 1983 action alleging violations of UDHR rights); *see also Renkel v. United States*, 456 F.3d 640, 643 (6th Cir. 2006) ("'courts *presume* that the rights created by

an international treaty belong to a state and that a private individual cannot enforce them.'") (quoting *United States v. Emuegbunam*, 268 F.3d 377, 389 (6th Cir. 2001). Thus, Hopkins alleged violations of UDHR art. 3, 5, and 7 must be dismissed as frivolous.

### E.       Intentional Infliction of Emotional Distress Claim.

Hopkins makes a conclusory claim that he seeks redress for emotional distress. (Doc. 1 at 5-6, 8; Doc. 10 at 2). Reading the pleadings in favor of the plaintiff, the Court interprets this as an attempt to plead a claim for intentional infliction of emotional distress. *Pro se* pleadings must be read liberally to determine "whether jurisdiction to consider[them] can be founded on a legally justifiable base." *Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir.1991). Therefore, the Court has an "obligation to look behind the label of a motion filed by a *pro se* inmate and determine whether the motion is, in effect, cognizable under a different remedial statutory framework." *United States v. Jordan*, 915 F.2d 622,624–25 (11th Cir.1990).

Under Alabama law, "[t]he four elements of the tort of intentional infliction of emotional distress, which is also known as the tort of outrage, are: (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) the distress was severe." *Martin v. Hodges Chapel, LLC*, 89 So.3d 756, 763 (Ala. Civ. App. 2011) (internal quotes omitted). "It is clear, however, that the tort of outrage is viable only when the conduct is 'so outrageous in character and so

extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Ex parte Bole*, 103 So.3d 40, 52 (Ala.2012) (citations omitted); *Thomas v. Williams*, 21 So.3d 1234, 1237-1238 (Ala. Civ. App. 2008).  Additionally, "[t]here are no reported Alabama cases where the underlying conduct allegedly causing the extreme emotional distress was a mere publication of information." *Holloway v. Am. Media, Inc.*, 947 F. Supp. 2d 1252, 1266 (N.D. Ala. 2013).

Taking the allegations as true and construing them in the light most favorable to the plaintiff, the Court finds that Hopkins has not sufficiently alleged conduct by the defendants that may, should the allegations be found to be true, be considered extreme, beyond the bounds of decency, atrocious and intolerable in a civilized community.  Therefore, plaintiff has failed to state a claim for relief.

## V. Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), (ii) and § 1915A(b)(1).[9]

---

[9]   In the alternative to dismissal pursuant to § 1915(e)(2)(B)(i), (ii), this action would be dismissed pursuant to 42 U.S.C. § 1997e(e), which provides, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  Thus, Hopkins is not entitled to compensatory or punitive damages in this action as he has failed to plead any physical injury.  Therefore, only a claim for nominal damages would be allowed to proceed.

The courts have traditionally considered one dollar to be the award for nominal damages.  *See Carey v. Piphus*, 435 U.S. 247, 266-67, 98 S. Ct. 1042, 1053-54, 55 L. Ed. 2d 252 (1978) (holding if plaintiffs were entitled to nominal damages for the mere violation, the damages should not exceed one dollar); *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999) ("[N]ominal

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden,* 715 F.3d 1295, 1300 (11th Cir. 2013). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE and ORDERED this the 3rd day of March, 2015.**

**s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE**

---

damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury."); *Qualls v. Santa Rosa County Jail*, Case No. 3:10cv54/MCR/MD, 2010 U.S. Dist. LEXIS 19469, * 8 n.1, 2010 WL 785646, *3 n.1 (N.D. Fla. Mar. 4, 2010) (unpublished) (dismissing the plaintiff's complaint as it "cannot be liberally construed as requesting nominal damages, because he specifically requested only $250,000 in compensatory and/or punitive damages"); *Partain v. Walker*, Case No. 5:10-CV-116 (CAR), 2010 U.S. Dist. LEXIS 41707, *4,  2010 WL 1740775, *1 (M.D. Ga. Apr. 28, 2010) (unpublished) (finding that inmate's request for $1000 for every exercise hour that he did not go outside and $10,000 for each day that he went outside in shackles were not requests for nominal damages); *Harrison v. Myers*, Case No. 10-0566-KD-N, 2011 U.S. Dist. LEXIS 82738, *19-20,  2011 WL 3204372, *7 (S.D. Ala. July 13, 2011) (unpublished) (finding that the prisoner's request of $2,500 was not for nominal damages inasmuch as nominal damages implies a mere token or trifling); *In re Bayside Prison Litigation*, Case No. 09–2365(RBS/JS), 2010 U.S. Dist. LEXIS 124624, *20, 2010 WL 4916716, at *4 (D.N.J. Nov. 23, 2010) (unpublished) (finding that "$2,000.00 surely surpasses the limit of what constitutes a 'minimal' amount of compensation by any definition of the term 'nominal'").

Thus, even if Hopkins were able to prove a constitutional violation in this §1983 action, he would be entitled to nominal damages of one dollar.